Good morning, Ms. Enright. Good afternoon, and may it please the Court. Good afternoon. Why do you keep saying that? Wishful thinking. Are you CJA counsel? We are, yes. Thanks for all you've been doing over the many months without getting paid. Thank you. Emma Enright, on behalf of Appellant Jabbar-Evans, I would like to reserve three minutes for rebuttal. Sure. Thank you. The issue on the table is one that presents itself in virtually every way. We submit that the District Court erred by allowing such testimony in this case. But be specific as to the testimony. Some of it I think you'd agree is okay. Some of it maybe you wouldn't agree. Some of it's not okay. What is the part that troubles you the most under 702? There are 30 specific instances of testimony identified at pages 15 to 16 of our brief. I'd be happy to walk through any of them. No, go ahead. It's okay. And those specific instances laid out are the ones that we are challenging. And you're saying all those instances are specialized knowledge, therefore requiring qualification as an expert as opposed to general lay experience and testifying as to what that experience told you from a common sense point of view? Yes, Your Honor. And what was specialized here that would require Officer Costigan to be qualified as an expert? His testimony about what I would call the general practices or operations of narcotics dealers. And I think that the purported circuit split on this issue helps crystallize it a bit. And I just want to start by saying that there is no clear guidance on this issue, although it's one that presents itself in many drug trafficking cases. And the government purports to identify a circuit split on the issue, but it was actually only able to find one court, the First Circuit, that allows lay witnesses to testify about the operations. Do you believe a police officer, let's assume a guy with a lot of experience, could they be qualified as an expert? Generally, yes. So where do we draw the line? Help us write this opinion, right? So where do we draw the line, giving district courts some guidance as to when you have to qualify the expert, by the police officer as an expert, before they can offer opinion testimony? What we are asking this court to hold is that testimony about the operations of narcotics dealers may only be offered by expert witnesses. I'm sorry, may only? Only be offered by expert witnesses. Well, but that doesn't help us a great deal because in 99% of the cases, the officer who's testifying will be qualified as an expert witness. So help us with some kind of rule for, let's say you get a rookie cop up there, and this is a different situation because that's not, I think his name was Costello or Costigan. Costigan, that's not a Costigan scenario. But 701 will allow the person to testify as to their own, as to certain conclusions based upon their own experience and observations. A person who's been driving a car for 40 years can be at a street corner, I think, and testify about the approximate speed of a car that went through the red light. Do you agree with that? Yes, Your Honor. It was going about 40 miles an hour, it was going about 10 miles an hour. You don't have to be an expert witness on motion to do that around Newton's laws. So you're telling that to the police officer with a modicum of experience, forget my first day on the job, rookie. How do we do that? How do we carve up a rule? To answer that, I think it's helpful to look at other decisions from this court, specifically starting with United States v. Watson, 260 F. 3rd 301. This court explained that the operations of narcotics dealers have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror. And other decisions from this court further crystallize that? Yeah, but common sense comes in. For example, one of the questions that's in your brief is, quoting now from your brief, whether drug trafficking is typically a cash business. I'm guessing most folks would assume, yeah, that's a cash business. I don't think that they would ask for receipts and write out checks or use a VIN number. So some of it is just common sense. Some may arguably be common sense. But in other cases, this court has discussed more specific examples. For example, in United States v. Price, 458 F. 3rd 202, within the scope of the professional customs of drug dealers, the testimony was about drug dealers being very likely to carry guns versus drug buyers almost never carrying guns. So help us out. Let's assume you're writing the opinion, right? What guidance would you give to trial courts as to when the officer should be qualified? When do you cross the line from just general experiential restatement of what you saw and common sense into, I know from my training, et cetera, and my specialized expertise that I am going to tell the jury something, in which case the latter, you have to be qualified as an expert. When do you cross the line? To sort of paraphrase your Honor's question, the issue is the line is between where an officer is, for example, identifying a drug as a drug or white powder as white powder. When they take those observations and interpret them for the jury and they go... They make more generalized conclusions about the evidence? Yes, yes. That's when they cross the line from 701 to 702? I mean, usually you're thinking of, you know, here's the manufacturing process for fentanyl or methamphetamine or whatever. That's obviously specialized. But what, in this case, did Detective Costigan do that could only come from a specialized training background? Without going into every single of the 30 instances... Just give me any example you have. For example, the very first point that we are challenging is his explanation of the connection between firearms and drug trafficking. That is not something that the average layperson would know, which is consistent with this court's holding in Price, that the connection between a drug dealer and a firearm is a suitable topic for expert testimony. Although if you watch TV, usually people who deal in narcotics also have a gun. So maybe the ordinary person would think, OK, that's the way it is. What's specialized about that? If you watch TV, you know that kryptonite is something they can kill Superman too. I was thinking the same thing, the information you get from television. What other examples might you have that says that what the Detective Costigan did here could only be based on his specialized background? Other examples include explaining the significance of certain items in the context of drug manufacturing. For example, the purpose of a spoon, a lighter, a scale, a strainer, and other items like that. In terms of stepping on it, cutting, pressing, I'm assuming you would think that would need expert testimony, correct? Yes, Your Honor. I mentioned that swimming equip, but Judge Amber makes a really good point. The person sitting on the jury has some pool of knowledge that absent mass media, you wouldn't expect them to have. They come to the court aware of certain, maybe it's stereotyped, but some knowledge is kind of out there in the general public from the information we're fed when we watch TV. We hear from, going back to the first case, popular movies like The Sopranos or The Godfather, and how do we parse that out? How do we say, well that's something that would be within the kin of an ordinary person's knowledge, even though that knowledge is not derived directly based upon their experience. Their on-the-job experience, but just their general experience, as opposed to something that really requires 702 qualifications. Does that make any sense, the question? If not, let me know. The clerks tell me all the time it makes no sense. I believe that makes sense, Your Honor. The right answer. That was the right answer. You hear that? To answer that, I would like to make two points. The first is for, in terms of giving the courts and attorneys guidance on this issue, the court can not only look to its previous decisions in cases like Watson and Price, it can also look to decisions in other circuits. The 2nd, 7th, 9th, and DC circuits have all similarly limited the testimony about operations of narcotics dealers to expert witnesses, and in some of those opinions... When you say operations, how broadly or how narrowly are you defining operations, or looking at conduct as operations? For example, seducing, demanding cash, demanding that they get payment at the time of the transfer of the drugs, that's one part of operations, which may just be common sense, or the kind of thing that we believe we know based on what we've been exposed to. As opposed to packaging, cutting agents, whether or not a certain element found in a room is typically used as a cutting agent, explaining what a cutting agent is. How do we make that distinction? I believe, and if I might, I know I'm almost out of time. Please, go ahead. What we are asking the court to do today is adopt essentially a bright line rule that may be able to be defined within the context of these other decisions. Of course, it is likely that this issue will continue to come up as the court needs to further define what operations of narcotics dealers may include. Let me ask you this. Given that when the hotel staff and then the police found the two guns, bundles of heroin, the backpack full of narcotics, the empty glassine bags, the scale, the mortar, the press, is this a harmless error situation? This is not a harmless error situation. And just to briefly address that. Tell us why it's not. First, the government has the burden to show that it's highly probable that the error did not contribute to the judgment. And when I say error, I'm talking about all not qualifying the police and not offering expert testimony. Yes, yes. And but the person who walked into the one room saw two guns, right? I mean, that was the staff. Yes, your honor. And so that's out there. And then you see all this what they call paraphernalia and drug materials. It's replete. I mean, it's like, you know, it really is like out of out of a show that it's all there, all the makings of it, including the final product. What would what's the problem with that? Whether the officer or detective should have been qualified as an expert or should not. Isn't that evidence so overwhelming that it kind of rolls by or rolls over any claim, whether lay or expert? Doesn't make any difference. I would submit that it does make a difference, your honor. Because detective Costigan's testimony. Amounts to the only evidence for critical elements of the offense in terms of that he possessed these drugs, drug paraphernalia and weapons with the intent to distribute. What about the 13,000 glassine bags? Unless he's just weird for plastic bags. We're going to have 13,000 bags in a room along with scales. Just take those two things. Forget everything else. And a press. Why? Why wouldn't that make it homicidal? The issue with that, your honor, is that detective Costigan explicitly provides the link between. Well, forget Costigan for a second. Why couldn't the juror in their own common sense say 13,000 glassine bags and scales? My guess is he's not looking for a good time this weekend. He's going to do something else with the drugs they found. Plus, they've got the videos with the chips and trash bags back and forth between 07 and 206. You'd be hard pressed to argue to the jury that this was his own personal use. And guns and drugs falling out of the roof. I mean, it's. What would it take for you to say that there was overwhelming evidence? Even if there. Was overwhelming, what would it take for you to say that there clearly was? The I would submit that. It's hard to quantify what would be overwhelming evidence. But to one of your honors points, if a juror can draw these same conclusions on their own. Why does the government need to offer this testimony? And by offering this testimony, it only adds to the prejudice against Mr. Evans. It may add. But the thing is, it adds something that we were already across the line is the whole point about harmless error. So in other words, there's so much evidence that you crossed the line into criminal activity and finding. All you need to have is to have that for the conviction. And whether somebody should have been qualified as an expert or should not. Is. Superfluous, almost. I would submit that it is. Not superfluous. In the sense that. The government did argue in its brief relatedly that. Detective Costigan would have qualified and been admitted as an expert. But that is wrong for two reasons. The 1st, the government make very clear. At trial that it was not offering detective Costigan as an expert witness. And if this court were to. Remand the case for further proceedings. The government cannot be allowed a 2nd bite at this apple to qualify. An expert witness when they explicitly chose not to at the time. And without this testimony from detective Costigan, all the government is left with is inferences. And it. Does not meet the burden of beyond a reasonable doubt that Mr. Evans was guilty of the crimes charged. Thank you very much. Thank you. Good afternoon, Mr. Tillow. Good afternoon. Your honors Jane to tell on behalf of the United States. I'll start with the question that you asked opposing counsel. Where is the line when a police officer is testifying based on knowledge that he or she has. From his his job. So, I think manufacturing, which you raised is a really good. Place to start in a really good example for this distinction. So, in this case, even though detective Costigan used the word manufacturing to describe what was going on in this room. What what was really happening was. Someone was mixing up Mr. Evans was mixing up the raw drug. With a dilutant that looked was the same texture another white powder mixing it up. Getting out all the lumps and putting it into little plastic baggies. That were stamped with different colors. That's a process that a 2nd grader could probably understand. And that's why that process, because it is something that a jury could easily understand. It's something that you can understand with common sense. That is not the type of technical or specialized knowledge that requires expert testimony. However, on the other hand, you mentioned, for example, manufacturing methamphetamine. MDMA, those types of manufacturing drugs would certainly, I think, require expert testimony to describe that process. But does that go to? I think we said to Jim West about who asked about harmless errors. That's as soon as he never testified his conclusion. Based upon what was on the room, you would argue to the jury. Ladies and gentlemen, the judge is going to tell you that you apply your common sense to the evidence in this case. Use your common sense. 13,000 glassine bags, scales. Do you believe that this was possessed for its own personal use? And sit down. Yes, I absolutely believe that you could look at all. The jury could have figured this out eventually all on its own. It could have been put in a room with all of the pictures of the evidence. Especially considering that it saw the different, the varying levels of packaging. It saw the raw drugs. It saw the drugs being put in the different bags. It saw the equipment with the residue on it. It could have figured this out. This wasn't a complicated process. That's not to say that this testimony wasn't helpful under 701. It was because the knowledge that Detective Costigan had enabled the jury to draw those lines a little bit more clearly, a little bit more quickly. Building the lily, I think, is what it's technically called. Help us out. Assuming you're right in this opinion. What direction would you give district courts as to when the line is crossed from 701 to 702? Okay. So, first of all, I would emphasize that this is an abusive discretion standard. And that's because this is incredibly fact-intensive and it's incredibly context-intensive. And the advice that I would give is I would look at, I think, that the line from the committee advisory notes to subsection C, the 2000 amendment, the added subsection C that says that the opinion results from a process of reasoning familiar in everyday life is a helpful one. It's not going to always give the answer. But I think that when you have something that you're using, you're applying your common sense to your personal knowledge, that is a good example of when something is lay opinion testimony as opposed to technical. That's versus knowledge that can be mastered only by somebody who, or testified to by somebody who's a specialist in the field. And then you have the detective coming in and he's saying, I've had this training. I've had this investigative experience. And he's going to be familiar with how illegal drugs are packaged for distribution, in quotes. Quote how they're manufactured and how illegal drugs are packaged for distribution.  And the materials and equipment that are necessary to manufacture and package narcotics. That is not something that the layperson typically knows. So in a general sense, I would agree with you. But when you go to the specifics of what he actually testified about and how it was connected to what he observed in the room, I think the layperson could have easily figured that out based on what he saw in that room. When he saw, he testified about the glassine bags. He testified about the residue on the grinder, the sifter, the scales. I think so. You're right. When you give the broader sort of description of, oh, I'm familiar with how drugs are processed, packaged, manufactured, distributed, that can cover a broad range of different practices, and some of which may require expert testimony. But then the prosecution asked him to explain the usage and significance of various seized items, as well as the usual practices of drug distributors. That's not something that people know. So first of all, I think the significance question, and we make this argument in our brief and we made it at trial, is to some extent, this was fact testimony about why he seized certain items in the room. This was a witness who was introduced as his only involvement in the case was executing the search warrant. And this was a search warrant for guns. This was a fact that the search warrant was only for guns. Again, the defense counsel brought up in his opening statement. So we had to explain to the jury why we were seizing things like stamp pads, why we were seizing things like a mirror, to avoid confusion. So I think that's part of a piece. The guns were found by the staff in the first room, right? Two guns were found by the staff in the first room. Yes, yes. And that led to the search warrant for a magazine. And then the drugs and paraphernalia were in plain view, or roughly. Shall we say dropping out of the ceiling in part? Yes, yes. So they went into the second room and they saw drugs and paraphernalia in plain view. And so I think that it's important to look at when he's explaining the significance of items, it's the items that could conceivably be innocent items, like a mirror, like a scale, like measuring cups. So let me ask, the next case, a trial of similar facts two weeks from now, would you need an expert to testify what branding is? Branding is. So I think it depends on the context. So first of all, I think that that's something that is kind of common sense. If you see a stamp on a bag, and I think that's something that an officer can testify, that's in their personal knowledge, something they learn on the job. That's something this court has taken judicial notice of. You can search Westlaw. You can find it in Ten Opinions. And what about pressing, stepping on it? Pressing, stepping on it. So I think, first of all, those terms, the fact that he defined terms, I don't think that makes it expert testimony. But the fact that he described the process of what pressing or stepping is, in this case he was looking at a press with residue on it, and he was looking at it in the context of this hotel room surrounded by all these drugs. Is it possible that in another case it would not be tied to his perceptions, and it might be different, and it might require expert testimony? Yes, that's possible. What about his testimony about how cash is bundled, with bigger bills banded together once they hit $5,000? So with that, I think, again, he's looking at the cash. He's testifying about what he's seeing. Very specific about the $5,000. He is. And that is something that, again, he's testifying about why he's taking this, what the significance of this cash is, and that, again, is something that potentially in another context might require him to be qualified as an expert. Why isn't that required here? Is there any background about the number of times he's seen that kind of money bundled up and the motivation for bundling it that way? Bundling is probably a bad word there, but you know what I mean. Well, right. Yeah, I mean, I think that he – I think that is a very limited discussion of how it is packaged and limited – or, sorry, how it is packaged and how many times he's seen it that way. I think he's just saying, yes, this is – this, you know, larger denominations rolled into the $5,000s. This is how it's seen. I think he's just – it's kind of a passing comment. It sounds to me like anything he would have found in there out of the ordinary, he would have said, well, this is the way drug dealers do it. And that's a good example of that. I don't know how he would know what the counterpractice is. Based on this record, the counterpractice amongst drug dealers in terms of how they roll up the money, and it may well be that it's unique to the individual dealer. There may not be any counterpractice. And he defines a brick. Well, he is drawing – That's the definition of a brick. So he talks about what causes a brick. Do you think the average person on the street would know what a brick is? No, but I think that's something that's within his knowledge as a police officer and that he's allowed to bring that to bear on what he's observing in the room. And I think that that is not so complex. I mean, a brick is simply bundles of 10 – I think it's 10 – sorry, five bundles of 10 bags of heroin. It could also be a brick of a kilo of cocaine. I'm sorry? It could also be a kilo of cocaine. A brick? Well, I think – Or to use in that context. Okay. I mean, I think that – I wasn't aware of that. But I think that, you know, I think that the definition of a brick that he gave is well within kind of the understanding of a common person. It's within his – yes, it's from his knowledge of a police officer. It may not be common knowledge, but it's a common – the process of reasoning is common. I think it's something that people can understand very easily, and it's something that he knows from his job, and I think that's permissible. He's allowed to apply his personal knowledge of what he knows from his job to what he's observing as long as it's something that doesn't require technical or highly specialized knowledge. And I would say that maybe the brick is a little bit – Give me an example of something that would require – Okay, sure, sure. So, for example, the – you know, you've mentioned a kilogram of cocaine. Okay, so I would take the position – I take the position at Royal Argument that when he testified that a $5 – sorry, that the single dosage of heroin is $5, that that is permissible. That is something that's within his personal knowledge. It doesn't require specialized – you know, he's not even really drawing an opinion about anything in this case, any evidence in this case about that. So that – I think that's permissible in this case. But if he were to testify – or if someone were to testify in a different case about the average cost of a kilogram of cocaine in 2018 in a certain region of the country under certain – you know, maybe you're only buying one kilogram or you're buying five together. You know, that might be – that might be something that would require expert testimony because you would be required to draw on a lot of other sources of information from other investigations that are more complex, right, than – That's like Esponda, the testimony in our Esponda case. It's analogous to that. Yes, exactly. So that's something that is more complex, that is not – you know, it's easy to give the foundation for the $5 bag of – dose of heroin, right? Oh, I've worked on over a thousand drug cases, and I know that, you know, people exchange $5 for a dose of heroin or they exchange $10 for two doses of heroin. I mean, I think that is just something that is very simple and easy, and it's something that's within his knowledge. And yes, it's within his knowledge from his job, but we allow, you know, people – and I think this is also something when you're giving guidance to – you know, you're not just giving guidance to witnesses or, you know, lawyers who are putting on witnesses who are police officers, but lawyers who are putting on witnesses who do any job. You know, I'm thinking of my recent cases. We had, you know, a postmaster testifying about the way that male carriers conduct their routines. He wasn't qualified as a witness, but he said, oh, yes, it usually takes this long. They usually start this way. Here's how they do it. You know, he was allowed to testify as, you know, just a fact witness about those common practices of male carriers, and that's something that – because that's sort of something that an average layperson and a juror can understand easily, even though he learned it on the job, even though it's sort of – it's knowledge that not everyone has. He was able to testify to those facts, not as an expert. The guns. The guns were found in a safe in the room separate from where the drugs were found, and he presents his opinion that, well, the guns are used to protect the drugs. Well, the guns are a floor away. If we were to find that that was improperly admitted on this foundation, would that require a remand for resentencing on count three? No, Your Honor, for many reasons. And first of all, I just want to correct, I think, your question, which is that there was testimony that these guns were connected to the drugs. The testimony was only that, in general, guns and drugs go together. Well, to a lay jury, that's going to be the same thing. If I say, generally, yeah, when you get guns and drugs go together, even though they weren't together here at the time the drugs were discovered, that's the same as a person saying, based upon my experience, drug dealers have guns to protect themselves, the money, and their product. Okay. Taking that assumption, you know, even so, there are still many reasons why that any error would still be harmless. So, first of all, the guns were, as I think, I forget who said it earlier, but that is common knowledge and it's common sense. It's both common knowledge and common sense. We have cases that say when guns are found in proximity to drugs. But room 207 versus room 206, that's not proximity anymore. So, first of all, I do think that it is proximity because all of the drugs were in room 207 the day before. You see video of all of the bags being carried from 207 to 306, and even you see a video of the defendant carrying the duffel bag with the fentanyl from room 207 where the guns were found to room 306. And even more importantly, I think, you find a gun magazine falls out of the ceiling. The gun magazine is stored with the, you know, kind of the, I'll call it the mother load. You know, there are drugs throughout the room, but the real mother load of drugs where the raw, unpackaged, big quantities of drugs are is where the gun magazine is stored. So I would argue that it meets proximity regardless. But there are other factors on the 924C charge that the jury was instructed on and that were present. So those are, you know, type of gun, two handguns. You know, it was illegally possessed. That helps prove 924C charge in furtherance of a gun trafficking charge. They were filled with illegal hollow point bullets. That goes towards the 924C charge. So, you know, there are, and again, I think Judge Ambrose asked, what do we make of sort of pop culture and whether some jury, a lot of jurors, you know, may have seen video, you may have seen The Wire. They know, or they read the news. They know that guns and drugs are connected, that there's a lot of gun violence with drugs. Well, I would say that, you know, that is something to consider. But I think that if you look at the common sense aspect and focus on that rather than common knowledge, you will still get there. So even if, you know, even if not all jurors have seen, maybe you have a juror who's a Luddite and doesn't watch TV. I know someone who doesn't have a TV. Yeah, so you still get to the same conclusion if you use the common sense and basically metric and say that if something is readily understandable by a layperson, just because you learn it on the job and you're applying that knowledge to something that you're proceeding, you're still getting to the same place, I think, than if you use something that's common knowledge based on pop culture or the news or something like that. I see my time is up. If the Court has no further questions, I ask that you affirm the judgment. Thank you. Thank you.  I would like to just briefly respond to a couple of points. I'm sorry, speak up just a little bit. You've got to be very soft voice. I just want to briefly respond to a couple of points. The first is I want to make clear that our issue with the testimony is not about whether there was a sufficient connection to the officer's perceptions during this case. It's about his interpretation of those perceptions that go beyond the common knowledge of the average person. Also, to be clear, we're talking about what is common knowledge and not just common sense. One example is that if a particular law enforcement officer had knowledge about a particular narcotics trafficking organization based on his investigation of that organization, that would be fair lay testimony, that he can talk about that particular organization's operations. But generally, going beyond his perceptions or what he may have seized in a particular case to interpret that within the context of narcotics trafficking goes beyond the line between lay and expert testimony. I believe Your Honors also asked a question about, in the next case, what about branding? And this is where I would point to other circuits that have talked about this issue. For example, the Seventh Circuit has explicitly defined expert testimony to include ways of packaging drugs. I also just want to turn back to what the government has said about Detective Kosigan's opinions. The government may argue at trial and to some extent has argued on appeal that Detective Kosigan offered no opinions. All of his testimony was offered to explain why he seized particular items, but a close review of the testimony belies that argument. He very clearly offered opinions, and those opinions are what go beyond the bounds of appropriate lay testimony. Unless Your Honors have any further questions, we respectfully ask the Court to vacate the judgment of conviction. Thank you. Thank you very much. Thank you to all counsel for your briefs and your arguments. We'll take this case under revisal.